UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 13 |
| | ) | |
| HECTOR AND ANA BRISENO, | ) | Bankr. No. 12 B 02903 |
| | ) | |
| Debtors. | ) | Honorable Janet S. Baer |
| | ) | |

**MEMORANDUM OPINION ON AMENDED ATTORNEY'S APPLICATION FOR COMPENSATION FOR REPRESENTING CHAPTER 13 DEBTORS**

Katz Law Office, Ltd. (the "Katz firm") was retained by Hector and Ana Briseno (the "Debtors") to represent them in the above-captioned chapter 13 bankruptcy case. The Katz firm's amended application for compensation (the "Application") requests an award of attorneys' fees of $3,500 pursuant to its Attorney-Client Agreement for Legal Services. The Debtors object to the Application, alleging that the firm should not receive any fees because its attorneys "betrayed [the Debtors'] trust" in the representation, particularly with respect to negotiations between those attorneys and counsel for Mutual Federal Savings and Loan Association (Mutual Federal), the lienholder of three mortgages on two pieces of real property owned by the Debtors.[1] For the reasons set forth below, the Court awards the Katz firm $3,000 and disallows the remaining fees.

**Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and Internal

---

[1] Two adversary proceedings brought by the Debtors sought to strip the mortgage liens from those two pieces of property, located in Chicago at 4731 South Wood Street (the "4731 Property") and 4750 South Wood Street (the "4750 Property"). *See Briseno v. Mut. Fed. Sav. & Loan Ass'n (In re Briseno)*, Bankr. No. 12 B 02903, Adv. Nos. 12 A 00440, 12 A 00441, 2013 WL 3964269 (Bankr. N.D. Ill. Aug. 2, 2013).

Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. The matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is properly placed in this Court pursuant to 28 U.S.C. § 1409(a).

**Facts**

The pertinent facts, drawn from the parties' pleadings and the Court's docket, are as follows:

1. The Debtors filed their joint chapter 13 bankruptcy case on January 27, 2012. The voluntary petition for relief was filed by the law firm of Robert J. Semrad & Associates, LLC (the "Semrad firm").[2]

2. The Semrad firm prepared and filed all of the Debtors' required documents, attended the 341 meeting of creditors, obtained an order extending the automatic stay pursuant to section 362(c)(3), filed the Debtors' chapter 13 plan, subsequently modified that plan on two separate occasions, filed two adversary proceedings to strip down the first mortgage liens on the Debtors' real properties, and filed a motion to strip off a second mortgage on the 4731 Property. *See Briseno v. Mut. Fed. Sav. & Loan Ass'n (In re Briseno)*, Bankr. No. 12 B 02903, Adv. Nos. 12 A 00440, 12 A 00441, 2013 WL 3964269 (Bankr. N.D. Ill. Aug. 2, 2013).

3. On July 24, 2012, prior to the resolution of the adversary proceedings and confirmation of a chapter 13 plan, the Semrad firm filed a motion to withdraw as counsel, citing irreconcilable differences between the Debtors and the Semrad attorneys. That motion was granted on July 26, 2012.

4. On September 20, 2012, the Court granted the Semrad firm's application for compensation, awarding fees of $3,500 and expenses of $440 pursuant to the Court-Approved Retention Agreement which had been executed by the Debtors and the Semrad firm on January 27, 2012.

5. On October 23, 2012, debtor Hector Briseno ("Mr. Briseno") entered into an Attorney-Client Agreement for Legal Services (the "Contract") with the Katz firm. The Contract provided that the Katz firm would charge for legal services on

---

[2] The Court takes judicial notice of the docket in this case, including all documents and pleadings filed, all orders entered, and all arguments made at the hearings held before the Court during the pendency of this case. *See In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006). Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and the Federal Rules of Bankruptcy Procedure.

an hourly basis; requested a $2,000 deposit, which the Debtors paid; and indicated that the fees for legal services would not exceed $3,500.

6. On November 7, 2012, attorneys John Rottier and Bradley Schencker ("Schencker") of the Katz firm filed their appearances on behalf of the Debtors.

7. During a hearing on January 10, 2013, Schencker appeared telephonically, explained that there had been a "breakdown" in communication between the Katz attorneys and the Debtors, and orally moved to withdraw as counsel. Mr. Briseno did not object and, in fact, fired Schencker at the end of the hearing, whereupon the Court granted the oral motion, permitting Schencker and the Katz firm to withdraw as counsel.

8. Between October 23, 2012, when the Katz firm was retained, and January 10, 2013, when the motion to withdraw was granted, the firm billed 37.75 hours for legal services rendered, which, when multiplied by the applicable hourly rates charged by the Katz firm, resulted in total compensation of $7,769. Pursuant to the Contract, this amount is capped at $3,500.

9. On January 10, 2013, the Court scheduled an evidentiary hearing on the lien strip matters for April 4, 2013. This date was selected to give the Debtors ample time to obtain new counsel.[3] However, the Court advised the Debtors that the lien strip matters had been pending for many months and that the final hearing to determine the values of the properties at issue would take place on April 4, whether they hired new counsel or not.

10. The valuation hearing did, in fact, take place as scheduled. The Debtors, apparently opting not to obtain new counsel, represented themselves in a pro se capacity. At the conclusion of the hearing, the Court determined the value of each property at issue and granted the Debtors leave to file an amended chapter 13 plan that stripped down Mutual Federal's first mortgage liens on those properties consistent with the judicially-determined values. *See id.* at *9. Additionally, the Court found that Mutual Federal's second lien on the 4731 Property could not be stripped off under § 506(d) and, thus, denied without prejudice the Debtors' motion to strip that lien. *See id.*

11. The Katz firm's Application and the Debtors' objection to that Application remain. A hearing on the fees at issue (the "Fee Hearing") took place on July 11, 2013, and the matter is now ready for ruling.

---

[3] Maneuvering through a chapter 13 bankruptcy case and associated lien strip proceedings without the benefit of counsel is challenging in and of itself. *Briseno*, 2013 WL 3964269, at *1 n.2. The Debtors here, however, had the additional obstacle of being unable to speak English and, thus, required a translator to be present during hearings before the Court. *See id.*

**Discussion**

In their objection to the Katz firm's Application, the Debtors essentially contend that no fees should be awarded because: (1) the firm did not do any appreciable work in the Debtors' case, despite the time entries reflected in the Application; and (2) the work that the Katz attorneys did do was to the Debtors' detriment. Specifically, the Debtors allege that instead of getting ready for a hearing on the merits of the lien strips, the Katz firm did nothing and then, just prior to trial, insisted that the Debtors agree to the valuations reached by Mutual Federal's appraisers so that the matter would not go to trial. The Debtors also maintain that they had authorized settlement of the lien strip matters at certain amounts but that the Katz firm used higher, less advantageous figures when communicating the offers to Mutual Federal. Additionally, the Debtors contend that the Katz attorneys refused to prepare for trial using the Debtors' appraisers.

In resolving this matter, the Court turns to sections 329 and 330 of the Code. Section 330 provides that an attorney representing a debtor in a bankruptcy case may be awarded "reasonable compensation for actual, necessary services rendered." 11 U.S.C. § 330(a)(1)(A); *see also In re Lasica*, 294 B.R. 718, 721 (Bankr. N.D. Ill. 2003). The Court has a duty to independently examine the reasonableness of the fees requested. *In re Eckert*, 414 B.R. 404, 410 (Bankr. N.D. Ill. 2009). Section 329, in turn, authorizes the Court to determine the "reasonable value" of the services provided by counsel and to compare that value to the amount that the debtor paid or agreed to pay for legal services. 11 U.S.C. § 329(b); *see also In re Geraci*, 138 F.3d 314, 318 (7th Cir. 1998); *In re Jackson*, 401 B.R. 333, 341 (Bankr. N.D. Ill. 2009). If the Court finds that the fee charged by the attorney "exceeds the reasonable value" of the services provided, it can

cancel any compensation agreement between counsel and the debtor or it may order the return of the excessive portion of the fee to either the debtor's estate or the entity that made the payment. 11 U.S.C. § 329(b); *Geraci*, 138 F.3d at 318; *In re Gage*, 394 B.R. 184, 191 (Bankr. N.D. Ill. 2008). In determining "reasonable value," the Court must consider "the nature, the extent, and the value" of the services provided by taking into account such factors as: (1) the time spent on the services; (2) the rates charged; (3) whether the services were necessary for the administration of the case; (4) whether the services were performed within a reasonable amount of time; (5) whether the attorney demonstrated skill and experience in the bankruptcy field; and (6) whether the compensation is of an amount customarily charged by comparably skilled practitioners. 11 U.S.C. § 330(a)(3)(A)-(F). The attorney whose fee is being questioned bears the burden of establishing the reasonableness of the fees. *In re Kenneth Leventhal & Co.*, 19 F.3d 1174, 1177 (7th Cir. 1994); *Geraci*, 138 F.3d at 318, *Jackson*, 401 B.R. at 341.

In this matter, the Katz firm has met its burden in substantial part. The itemized time sheets submitted by the firm enumerate credible, detailed descriptions of the legal services provided to the Debtors. Based on those itemizations, the Court finds that the time spent by the Katz attorneys in providing legal services to the Debtors was both appropriate and necessary for the administration of the case and that the rates charged for those services were commensurate with those charged by comparably skilled attorneys.

The problem with the Debtors' allegations in this matter is that the itemizations, the other documents filed on the docket, and the testimony elicited at the Fee Hearing do not support the Debtors' version of the facts. For example, the Debtors alleged at the Fee Hearing that the Katz firm did not contact the Debtors' appraisers until the day before the trial. The time sheets,

however, suggest that the Katz attorneys contacted those appraisers on October 31, 2012, December 7, 2012, and December 10, 2012. Further, the pre-trial statements for each of the two lien strip adversaries, which were prepared by both the Katz attorneys and counsel for Mutual Federal, refer to the Debtors' appraisals and list their appraisers as witnesses.

As to the Debtors' allegations regarding settlement, Mr. Briseno insisted at the Fee Hearing that he had authorized the Katz firm to settle the lien strip adversaries on his behalf using a value of $30,000 to $40,000 for the 4731 Property and a value of $50,000 for the 4750 Property. He maintained that he called his wife during the meeting at which these offers were authorized to tell her the figures that had been decided upon and stated that he could provide the Court with a letter that the Katz firm had given him indicating the values offered. The Court gave Mr. Briseno an opportunity to produce an affidavit from his wife, along with the offer letter to which he referred. Subsequently, Mr. Briseno filed a document in which he stated that the offers he discussed with the Katz attorneys–and which the attorneys "did not respect"–were $60,000 for the 4731 Property and $90,000 for the 4750 Property. A copy of the letter from the Katz firm to counsel for Mutual Federal, which was included with Mr. Briseno's document, reflects those figures. Thus, the values that Mr. Briseno testified to at the Fee Hearing and those that he apparently agreed to as stated in the later-filed document and corresponding letter are altogether inconsistent.

The Debtors already paid legal fees of $3,500 to the Semrad firm for preparing and filing their chapter 13 petition, original and modified plans, adversary proceedings, and other documents necessary to proceed for the first six months of their bankruptcy case. Thereafter, the Debtors paid the Katz firm a deposit of $2,000, which Mr. Briseno apparently believed would be

sufficient to complete the chapter 13 case. Now, however, the Debtors allege not only that the Katz firm is not entitled to the remaining $1,500 owed under the Contract, but also that the firm should return the deposit that was paid by the Debtors.

At the heart of the Debtors' objection to the Katz firm's Application is Mr. Briseno's mistrust as to the work that the firm performed for the Debtors. Mr. Briseno stated that the Katz attorneys lied to him and breached his trust. He claimed that the Katz firm was somehow in collusion with counsel for Mutual Federal. He contended that the attorneys did not provide any legal services at all. And he suggested that the firm had some sort of improper motive in failing to litigate the lien strip matters. Despite these allegations, there is simply no evidence that the Katz attorneys lied to Mr. Briseno, acted with collusion, or otherwise violated his trust. Further, there is a great deal of evidence that the Katz attorneys performed quite a bit of work in this case.[4] While Mr. Briseno may not have liked the advice his attorneys gave him–to settle with Mutual Federal instead of litigating the valuation issues–he is not excused from having to pay his counsel for the work that they did.

The only evidence that justifies a reduction in the Katz firm's fees relates to the final breakdown in communication that came to light during the January 10, 2013 hearing at which the Katz attorneys withdrew as counsel. The evidence clearly shows that the Katz firm attempted to negotiate a settlement with counsel for Mutual Federal with respect to the lien strips. What is not clear, however, is how the Katz attorneys and counsel for Mutual Federal reached the conclusion that the matter had been settled, apparently at the figures arrived at by Mutual Federal's

---

[4] According to the time sheet entries, which the Court finds credible, the Katz attorneys, among other things, reviewed each of the Debtors' appraisals, drafted various letters, met or spoke with the Debtors on numerous occasions, prepared modified plans, gathered exhibits, called the Debtors' appraisers regarding their testimony at trial, did research for and drafted pre-trial statements, and prepared a settlement offer.

appraisers. Mr. Briseno testified that he had not authorized such settlement, that he was traveling to and from Mexico during the pendency of the settlement negotiations, and that, generally, there was "confusion" as to the Katz firm's representation at that time.

While there is no evidence of deception or deceit in these proceedings, there was clearly a breakdown of communication between attorney and client. An adjustment of the fee to account for the Katz firm's role in the miscommunication is, therefore, in order. Accordingly, the Court will award the Katz firm attorneys' fees of $3,000.

## Conclusion

For the foregoing reasons, the Court sustains the Debtors' objection in part, awards the Katz firm fees in the amount of $3,000, and disallows the remaining fees of $500. A separate order will be entered consistent with this Memorandum Opinion.

DATED: September 25, 2013  ENTERED:

JANET S. BAER
United States Bankruptcy Judge